## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Andrew Erik Heiderscheid,                             Case No. 18-cv-1180 (JNE/LIB)

                    Plaintiff,

                                                      **ORDER AND**
v.                                              **REPORT AND RECOMMENDATION**

Dakota County Sheriff Office, et al.,

                    Defendants.

         This matter comes before the undersigned United States Magistrate Judge upon Plaintiff's Motion to Modify the Pretrial Scheduling Order, [Docket No. 77]; Plaintiff's Motion to Appoint Counsel, [Docket No. 78]; and Defendants' Motion for Summary Judgment. [Docket No. 83]. Defendants' Motion for Summary Judgment was referred to the undersigned by the Honorable Joan N. Ericksen. [Docket No. 91]. After conducting a hearing on the present Motions, the undersigned took the parties' Motions under advisement. [Docket No. 114].

         For the reasons discussed herein, Plaintiff's Motion to Modify the Pretrial Scheduling Order, [Docket No. 78], is **DENIED**, and Plaintiff's Motion to Appoint Counsel, [Docket No. 78], is **DENIED**.

         Furthermore, the undersigned recommends that Defendants' Motion for Summary Judgment, [Docket No. 83], be **GRANTED in part and DENIED in part**, and that the present action be **DISMISSED** as set forth herein.

## I.        Background

         Plaintiff, proceeding pro se, initiated the present action on April 30, 2018, by filing his Complaint. [Docket No. 1]. On August 24, 2018, Plaintiff filed the now operative Amended Complaint. [Docket No. 25]. Plaintiff's Amended Complaint names the Dakota County Sheriff

Office, Deputy Winfrey, Deputy Arturo Herrera, Deputy Smith, Deputy Kent Themmes, Deputy John Doe, and Deputy Jane Doe as Defendants in the present action. Id. Plaintiff was later granted leave to further amend his Amended Complaint to add Jacob Schak, Tina Tyler, Ryan Fitzhenry, and Julienne Oppong in place of the John and Jane Doe Defendants in the present action. [Docket No. 114].

In his Amended Complaint, Plaintiff alleges that the individually named Defendants used excessive force in removing him from his jail cell on August 31, 2013, while Plaintiff was subject to pretrial detention. See, Amended Compl., [Docket No. 25], at 2–3.[1] On the basis of the assertions in his Amended Complaint, Plaintiff, pursuant to 42 U.S.C. § 1983, raises a single claim alleging that all the Defendants' actions violated Plaintiff's right to be free from the use of excessive force.

On October 22, 2018, the undersigned issued a Pretrial Scheduling Order in the present case. [Docket No. 32]. The Pretrial Scheduling Order established that the period during which the parties were permitted to conduct all discovery, whether fact or expert, was to terminate on July 15, 2019. Id. The Order further provided that all nondispositive motions were to be filed prior to August 15, 2019. Id.

On February 12, 2019, Defendants filed a Motion to Compel, [Docket No. 33], seeking an Order of this Court requiring Plaintiff to respond to Defendants' discovery requests. In support of that Motion, Defendants asserted that Plaintiff had wholly failed to previously respond to or participate in discovery. Id.

On February 19, 2019, the undersigned issued an Order, [Docket No. 41], establishing a briefing schedule on Defendants' Motion to Compel. A copy of the February 19, 2019, Order

---

[1] Plaintiff alleges that the individually named Defendants were each a Deputy at the Dakota County Jail at all times relevant to his Amended Complaint.

2

was mailed to Plaintiff by the Clerk of Court's office, however, that mailing was returned to the Court as undeliverable.  [Docket No. 42]. On March 22, 2019, the undersigned granted in part and denied in part Defendants' Motion to Compel. [Docket No. 47]. A copy of that Order was mailed to Plaintiff by the Clerk of Court; however, that mailing too was also returned to the Court as undeliverable. [Docket No. 48].

On April 26, 2019, Defendants filed a Motion for Sanctions, [Docket No. 49], arguing that the present action should be dismissed with prejudice because of Plaintiff's failure to comply with the Court's previous discovery Order and because Plaintiff had failed to prosecute the present action.

On May 1, 2019, the undersigned issued an Order establishing a schedule for the briefing regarding Defendants' Motion for Sanctions. [Docket No. 57]. The Court's May 1, 2019, Order also scheduled oral arguments regarding Defendants' Motion for Sanctions to be heard before the undersigned on July 2, 2019. Id. The Clerk of Court's office attempted to mail a copy of the May 1, 2019, Order to Plaintiff, however, the mailing was once again returned as undeliverable. [Docket No. 58].

Plaintiff did not respond to the Motion for Sanctions in the time permitted. However, on June 5, 2019, Plaintiff filed a Notice of Change of Address, [Docket No. 60], which provided the Court with his purported new address at 1063 Wilson Avenue in St. Paul, Minnesota.

On June 18, 2019, Defendants filed a Certificate of Service indicating that on June 12, 2019, Defendants' counsel had caused certain documents to be served upon Plaintiff through the United States mail. [Docket No. 61]. Specifically, Defendants' counsel served upon Plaintiff at his new address all the documents previously filed in the present case from October 22, 2018,

through May 24, 2019, including this Court's May 1, 2019, Order convening a hearing on Defendants' Motion for Sanctions for July 2, 2019.

The Court held the Motions Hearing on July 2, 2019. [Docket No. 62]. Plaintiff did not appear. On August 16, 2019, Defendants' filed a Notice, [Docket No. 63], indicating that the documents Defendants had mailed to Plaintiff's new address on June 12, 2019, had also been returned as undeliverable.

On September 5, 2019, the undersigned issued an Order, [Docket No. 64], denying Defendants' Motion for Sanctions. In so doing, the Court noted that, on the record then before the Court, it could not be specifically established that Plaintiff had willfully violated any of this Court's previous Orders because it appeared that Plaintiff had not yet received notice or a copy of any of the Court's previous Orders, including the Court's March 22, 2019, Order requiring him to respond to certain discovery requests. [Docket No. 64]. The Court concluded that "[g]iven the procedural history of the present case . . .  the more appropriate course of action" at that time was "to allow Plaintiff adequate time to comply with this Court's previous discovery Order after he is made aware of his obligations in that Order." Id. at 9. The Court noted that it would separately amend its March 22, 2019, Order to reflect new deadlines by which Plaintiff was to respond to Defendants' discovery requests, and that the Court would issue an Amended Pretrial Scheduling Order. Id. Lastly, the Court ordered Defendants to personally serve Plaintiff with a copy of the Court's September 5, 2019, Order; the Court's soon to be forthcoming amended discovery Order; and the forthcoming Amended Pretrial Scheduling Order. Id.

On September 5, 2019, the undersigned issued the Amended Pretrial Scheduling Order. [Docket No. 66]. The Amended Pretrial Scheduling Order established that all discovery whether fact or expert was to be completed by no later than December 15, 2019. Id. The Pretrial

Scheduling Order further provided that all nondispositive motions were to be filed prior to January 15, 2020. Id.

On September 24, 2019, Defendants filed a letter, [Docket No. 67], informing the Court that Defendants had been unable to serve Plaintiff with a copy of all of this Court's previous Orders as directed. Specifically, Defendants asserted that attempts to mail the documents had been unsuccessful, and although Defendant retained the services of Metro Legal, they had been unsuccessful in locating Plaintiff. Id.

On December 12, 2019, Defendants filed a Motion to Modify the Pretrial Scheduling Order. [Docket No. 68]. Defendants Motion asserted that Defendants had recently learned that Plaintiff was in custody at the Ramsey County Detention Center; that on December 3, 2019, Defendants had "personally served Plaintiff with the pleadings, Court Orders, and" Defendants discovery request; and that on December 11, 2019, Defendants had "served Plaintiff with a portable drive containing all [Defendants'] responsive discovery." Id. On that basis, Defendants requested the deadline for the completion of discovery be extended to January 2, 2020. Id.

On December 13, 2019, the undersigned issued an Order, [Docket No. 72], granting Defendants' request to extend the discovery deadline to January 2, 2020. The Order specifically noted that all other deadlines remained in full force and effect. Id.

On February 7, 2020, Plaintiff filed his Motion to Modify the Pretrial Scheduling Order. [Docket No. 77]. In his Motion, Plaintiff asserts that he seeks to extend the deadline for completing discovery because he was unable to review the electronic discovery he was provided while he was detained at the Ramsey County Jail, and he was not provided the discovery in paper format until after January 13, 2020. Id. On February 7, 2020, Plaintiff also filed his Motion to

Appoint Counsel. [Docket No. 78]. Plaintiff mailed these filings to the Clerk of Court from the Ramsey County Adult Detention Center. [Docket No. 81].

On February 13, 2020, Defendants filed their Motion for Summary Judgment. [Docket No. 83]. Defendants filed a Certificate of Service indicating that on February 14, 2020, Defendants' counsel mailed Plaintiff a copy of Defendants' Motion for Summary Judgment and the documents submitted in support thereof. [Docket No. 92].

On February 19, 2020, after Defendants' Motion for Summary Judgment was referred to the undersigned, the Court issued an Order establishing a briefing schedule on the parties' present Motions. [Docket No. 98]. The Order permitted Plaintiff until March 12, 2020, to responded to Defendants' Motion for Summary Judgment. Id. The Order also scheduled oral arguments regarding the parties' present Motions to be heard before the undersigned on April 14, 2020. Id. A copy of the Court's February 19, 2020, briefing schedule Order was mailed to Plaintiff at the Ramsey County Adult Detention Center. [Docket No. 98]. This mailing was not returned to the Court as undeliverable.

On March 3, 2020, Plaintiff filed another change of address notice. [Docket No. 101]. Plaintiff's change of address notice indicated that his new address was now "909 Concord St. N Apt. 3" in "South Saint Paul, MN." Id. Despite Plaintiff's indication that this was his new address, the notice itself was sent from Plaintiff at the Aitkin County Jail in Aitkin, Minnesota. See, Id.

On March 6, 2020, the parties filed a Joint Stipulation for Protective Order, [Docket No. 103], which was signed by Plaintiff and Defendants' counsel. On March 9, 2020, the undersigned issued a Protective Order in the present case. [Docket No. 105].

Thereafter, the Clerk of Court's office attempted to mail a copy of the Protective Order to Plaintiff at his then most recently provided address at "909 Concord St. N."; however, that mailing was returned as undeliverable. The Clerk of Court's office also attempted to call Plaintiff at the phone number he had provided, but there was no answer.

On March 6, 2020; March 9, 2020; and March 11, 2020, Defendants also attempted to serve documents upon Plaintiff by mail at the "909 Concord St. N." address which Plaintiff provided. [Docket Nos. 109, 111]. Each of these mailings was returned to Defendants as undeliverable. Id.

On April 14, 2020, the undersigned conducted a Motions Hearing on the parties' present Motions. [Docket No. 114]. After Plaintiff failed to make an appearance at the scheduled start time of the Motions Hearing, the undersigned waited approximately fifteen minutes to begin the Motions Hearing which lasted twenty-five minutes. Id. Plaintiff failed to make any appearance at the Motions Hearing nor provide any post-hearing indication to explain his absence.

On June 15, 2020, Plaintiff filed another Notice of change of address. [Docket No. 115]. Plaintiff's Notice indicated that his address was the Dakota County Jail in Hastings, Minnesota.

On July 20, 2020, Plaintiff filed another Notice of change of address. [Docket No. 116]. Plaintiff's most recent Notice indicates that his current address is now "900 Rice St." in St. Paul, Minnesota.

## II.    Plaintiff's Motion to Modify the Pretrial Scheduling Order. [Docket No. 77].

Plaintiff seeks an Order of this Court extending the time in which the parties are permitted to conduct discovery in the present case. Plf.'s Mot. [Docket No. 77]. Plaintiff asserts that he needs the additional time to review the discovery he had been provided by Defendants' and to conduct additional unspecified discovery. Id.

Plaintiff's Motion to Modify the Pretrial Scheduling Order, [Docket No. 77], filed on February 7, 2020, is untimely. The operative Amended Pretrial Scheduling Order establishes that all discovery whether fact or expert was to be completed by no later than January 2, 2020, and it further provides that all nondispositive motions were to be filed prior to January 15, 2020. [Docket No. 63], as modified, [Docket No. 72].

## A. Standard of Review

Rule 16(b) governs the Court's modification of pretrial scheduling orders and provides that "[e]xcept in categories of actions exempted by local rule, the" designated judge "must issue a scheduling order" which "must limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b). Pursuant to Federal Rule of Civil Procedure 16(b)(4) and Local Rule 16.3(b), a party who moves to modify a scheduling order must demonstrate good cause to do so.

"The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 716–17 (8th Cir. 2008) (citing Rahn v. Hawkins, 464 F.3d 813, 822 (8th Cir. 2006); see, Fed. R. Civ. P. 16(b), advisory committee note (1983 Amendment) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension.")). "The 'good cause' standard requires a demonstration that the existing schedule cannot reasonable be met despite the diligence of the party seeking the extension." Burris v. Versa Products, Inc., No. 7-cv-3938 (JRT/JJK), 2009 WL 3164783, at *4 (D. Minn. Sept. 29, 2009). "While the prejudice to the nonmovant resulting from modification of the scheduling order may also be a relevant factor, generally, [a Court] will not consider prejudice if the movant

has not been diligent in meeting the scheduling order's deadlines." Id. (citing Bradford v. DANA Corp., 249 F.3d 807, 809 (8th Cir. 2001)).

"Obedience to the constraints of the Court's Scheduling Orders is critical if the Court is to capably perform its case management responsibilities." Damgaard v. Avera Health, No. 13-cv-2192 (RHK/JSM), 2015 WL 1608209, at *7 (D. Minn. Apr. 10, 2015) (quoting Tomlin v. Holecek, 158 F.R.D. 132, 135 (D. Minn. 1994)). Determining whether or not good cause through due diligence has been shown falls within the Court's broad discretion. See, Portz v. St. Cloud State Univ., No. 16-cv-1115 (JRT/LIB), 2017 WL 3332220, at *3 (D. Minn. Aug. 4, 2017)

Regarding the timing of when such a motion must be made, Local Rule 16.3(d) states "[e]xcept in extraordinary circumstances, before the passing of a deadline that a party moves to modify, the party must obtain a hearing date on the party's motion to modify the scheduling order. The hearing itself may take place after the deadline."

While the Court is required to construe the content within Plaintiff's pleadings liberally as he is proceeding pro se, plaintiff is nevertheless bound by all applicable procedural and substantive law. See, e.g., Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004); Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984); Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989); Cunningham v. Ray, 648 F.2d 1185, 1186 (8th Cir. 1981).

### B. Analysis

Plaintiff's untimely Motion to Modify the Scheduling Order, [Docket No. 77], seeks an Order of this Court extending the discovery period in the present case for period of approximately thirty (30) days. [Docket No. 77]. Although Plaintiff failed to file a memorandum of law in support of his Motion to Modify the Pretrial Scheduling Order, in the Motion itself, Plaintiff conclusory asserts that "[a]fter viewing the [Defendants'] discovery responses for my

9

set one request I've come across information that needs to be explored through further discovery." Id.

Notably absent from Plaintiff's motion is any discussion of Local Rule 16.3(d) or the requisite showing of "extraordinary circumstances" required to be demonstrated on Plaintiff's behalf. In fact, Plaintiff's Motion is devoid of even any discussion of the "good cause" required to be demonstrated by Plaintiff.

As noted above, Plaintiff's present Motion to Modify the Scheduling Order is untimely, and it was filed approximately a month after the passage of the deadline to complete discovery or to file nondispositive motions in the present case. Accordingly, Plaintiff is required to demonstrate "extraordinary circumstances" exists for the scheduling order to be amended. See, LR 16.3(d). Plaintiff, although pro se, is still required to comply with all procedural and substantive law, including the Local Rules governing motion practice in this District. See, e.g., Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004); Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984); Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989); Cunningham v. Ray, 648 F.2d 1185, 1186 (8th Cir. 1981).

Plaintiff's Motion wholly fails to even discuss much less demonstrate the requisite "extraordinary circumstances" necessary for the current amended pretrial scheduling order to be amended. This represents a sufficient basis to deny Plaintiff's Motion to Modify the Pretrial Scheduling Order.

In an abundance of caution, however, the undersigned will address certain additional issues raised in Plaintiff's Motion. Plaintiff makes certain assertions in Motion as to why there is a need for additional time to conduct discovery which could be broadly and liberally construed as an argument in support of demonstrating the circumstances necessary to modify the operative

Amended Pretrial Scheduling Order. Specifically, Plaintiff appears to simply imply that he feels he has not had sufficient time to review the Defendants' discovery disclosures in the present case, and he conclusorily asserts that some as yet unspecified additional discovery may still need to be conducted.

Upon review, however, the Court finds these arguments to be unpersuasive. Although Plaintiff may have received some of the discovery responses in January 2020, the timing of his receiving that discovery is largely a situation of his own making. As the Court previously explained in its September 5, 2019, Order, [Docket No. 64], Plaintiff's conduct throughout the course of this litigation has demonstrated a recurring failure in the present case to keep both the Court and Defendants apprised of his current address and contact information. Since the time of the Court's September 5, 2019, Order, Plaintiff's neglectful conduct in this regard has still not changed. It is Plaintiff's obligation to prosecute his case and to keep the Court informed at all times of his then current address and contact information.

Therefore, for the reasons discussed herein, the Court finds that Plaintiff has failed to demonstrate the "extraordinary circumstances" necessary to bring the present untimely motion, and he has further failed to demonstrate the requisite "good cause" to amend the operative amended pretrial scheduling order in the present case. See, LR 16.3(d); Sherman, 532 F.3d at 716–17; Rahn, 464 F.3d at 822.

Thus, Plaintiff's Motion to Modify the Pretrial Scheduling Order, [Docket No. 77], is **DENIED**.

### III.    Plaintiff's Motion to Appoint Counsel. [Docket No. 78].

Plaintiff's Motion to Appoint Counsel, [Docket No. 78], seeks an Order of this Court appointing an attorney to represent him in the present civil action. In support of this request,

Plaintiff conclusorily asserts only that he lacks any legal training; that he was, at the time he filed the Motion, "in the Ramsey Co[unty] Jail and limited to what [he] can do/Resarch [sic] with no law library on site"; and that "the Ramsey County Law Librarian is not familiar with Federal Law/Rules." [Docket No. 78].

This is not Plaintiff first motion to appoint counsel in the present civil case. On June 22, 2018, Plaintiff filed a motion to appoint counsel asserting that his imprisonment would hinder his ability to litigate the present action. [Docket No. 7]. On June 26, 2018, the undersigned denied Plaintiff's previous motion to appoint counsel. [Docket No. 8].

As the Court previously explained, indigent persons do not have a constitutional or statutory right to counsel in civil cases.  Pennsylvania v. Finley, 481 U.S. 551, 556–57 (1987). Rather, the appointment of counsel in civil cases is generally a matter committed to the discretion of the trial court. McCall v. Bensen, 114 F.3d 754, 756 (8th Cir. 1997); Mosby v. Mabry, 697 F.2d 213, 214–15 (8th Cir. 1982). Among the factors a court should consider in determining whether to appoint counsel are the factual and legal complexity of the case, the ability of the plaintiff to investigate and present his claims, and whether both the plaintiff and the court would benefit from representation by counsel for both parties.  McCall, 114 F.3d at 756; Johnson v. Williams, 788 F.2d 1319, 1322–23 (8th Cir. 1986).

In the present case, Plaintiff has failed to demonstrate any change in the circumstances of this case since his previous motion to appoint counsel was denied which would now warrant appointment of counsel. In fact, after he filed his original motion to appoint counsel and again after he filed the present Motion to Appoint Counsel, Plaintiff was, for a time, in fact released from detention thereby relieving any perceived difficulty imposed by Plaintiff's detention on his ability to prosecute the present action.

Upon consideration of these factors, the Court yet again finds that neither the facts nor the legal issues raised in the present action are so complex as to warrant appointment of counsel at this time. It appears to the Court that Plaintiff is able to articulate his claims, to argue his positions, and to communicate effectively with the Court. See, [Compl., Docket No. 1]; [Plf.'s Mot. for Appointment of Counsel, Docket No. 7]; [Plf.'s Amended Compl., Docket No. 25]; [Plf.'s Discovery Req., Docket No. 30]; [Plf.'s Mot. to Modify Pretrial Scheduling Order, Docket No. 77]; [Plf.'s Mot. to Appoint Counsel, Docket No. 75].

Therefore, Plaintiff's Motion to Appoint Counsel, [Docket No. 78], is **DENIED**.

## IV.    Dakota County Sheriff's Office

Before the Court considers Defendants' Motion for Summary Judgment, the Court must first consider a threshold issues which was not raised by Defendants.[2] Specifically, the Court must address Plaintiff's Amended Complaint naming the Dakota County Sheriff's Office as a Defendant in the present action.

It is well-established in the Eighth Circuit, and this District, that sheriff's offices are not legal entities capable of being sued because they are merely departments of a municipal corporation. See, e.g., De La Garza v. Kandiyohi County Jail, 18 F. App'x 436, 437 (8th Cir. 2001) (affirming summary dismissal of prisoner's action against county jail and county sheriff's office "because neither named party was a suable entity"); McKinney v. Minnesota, No. 8-cv-3769 (ADM/JSM), 2008 WL 4831762, at *4 (D. Minn. Nov. 3, 2008) (holding Hennepin County Sheriff's Office was not legal entity capable of being sued because it was a department of a municipal corporation); In re Scott Cty. Master Docket, 672 F. Supp. 1152, 1163 n.1 (D. Minn.

---

[2] In the present action, Plaintiff is proceeding in forma pauperis pursuant to 28 U.S.C. § 1915. Therefore, the Court may sua sponte consider this threshold issue even though not raised by Defendants in the present Motion. See, 28 U.S.C. § 1915(e)(2) (proving that "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted").

1987), aff'd sub nom. Myers v. Scott Cty., 868 F. 2d 1017 (8th Cir. 1989); Flores v. United States, No. 9-cv-838 (JMR/SRN) Report and Recommendation [Docket No. 161] (D. Minn. April 1, 2010) (holding that Ramsey County Sheriff's Office could not be sued under Minnesota state law because state law only permits actions against municipalities, for the acts of its officers, employees, and agents acting within the scope of their duties) report and recommendation adopted Order [Docket No. 201] (D. Minn. Aug. 11, 2010); Tisdell v. Crow Wing Cty., No. 13-cv-2531 (PJS/LIB), 2014 WL 1757929, at *4 (D. Minn. Apr. 30, 2014).

In McKinney v. Minnesota, for example, the plaintiff brought a 42 U.S.C. § 1983 claim against the Hennepin County Sheriff's Office. McKinney v. Minnesota, No. 8-cv-3769 (ADM/JSM), 2008 WL 4831762, at *4 (D. Minn. Nov. 3, 2008). The Court found that county sheriff's offices, such as Hennepin County Sheriff's Office, are not municipal corporations but rather are operating departments of municipal corporations. Id. Thus, the Court dismissed the plaintiff's § 1983 claim, concluding that, "[b]ecause [the sheriff's office] is not a legal entity recognized by [Minnesota] law, legislation is required to enable it to sue or be sued." Id.

In the present case, the Dakota County Sheriff's Office is likewise merely an operating department of the municipal political entity Dakota County. See, Flores v. United States, No. 9-cv-838 (JMR/SRN) Report and Recommendation [Docket No. 161] (D. Minn. April 1, 2010); De La Garza v. Kandiyohi County Jail, 18 F. App'x 436, 437 (8th Cir. 2001). As such, the Court finds that the Dakota County Sheriff's Office itself is not a recognized legal entity, and therefore, it is not capable of being sued as a named Defendant. See, e.g., De La Garza, 18 F. App'x at 437; McKinney, 2008 WL 4831762, *4; In re Scott Cty. Master Docket, 672 F. Supp. at 1163 n.1; Flores, No. 9-cv-838 (JMR/SRN), Report and Recommendation [Docket No. 161]; Tisdell, 2014 WL 1757929, at *4.

Therefore, it is recommended that Defendant Dakota County Sheriff's Office be dismissed from the present action. It is further recommended that Plaintiff's Amended Complaint as alleged against Defendant Dakota County Sheriff's Office be **DISMISSED without prejudice**. See, De La Garza v. Kandiyohi County Jail, 18 F. App'x 436, 437 (8th Cir. 2001) (modifying district court's dismissal of non-suable entity to dismissal without prejudice).

## V.   Defendants' Motion for Summary Judgment. [Docket No. 83].

The remaining Defendants in their Motion for Summary Judgment, [Docket No. 83], seek an Order of this Court entering judgment in their favor on Plaintiff's excessive force claim in his Amended Complaint. Defendants contend that judgment should be entered in their favor because Plaintiff has failed to establish the use of excessive force.[3]

### A.  Standard of Review

Summary judgment is appropriate when the evidence demonstrates that there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Smutka v. City of Hutchinson, 451 F.3d 522, 526 (8th Cir. 2006). As the Eight Circuit Court of Appeals has explained:

---

[3] Defendants also contend that Plaintiff's claim should be dismissed because he failed to exhaust his administrative remedies as purportedly required by the Prison Litigation Reform Act (hereinafter the "PLRA"). See, 42 U.S.C. § 1997e(a). In support of this contention, Defendants assert that Plaintiff was required to exhaust his administrative remedies because he was an inmate at the Dakota County Jail when the alleged incident underlying the present action occurred, and he was an inmate at the Aitkin County Jail at the time he initiated the present action. The Court finds this argument less than persuasive. In relevant part, the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. (emphasis added). The Dakota County Jail Inmate Handbook outlines the procedure with which a detainee at that facility must comply to file an administrative grievance to begin exhausting his administrative remedies. [Ex. 21, Docket No. 87-1]. On its face, that document does not provide a deadline by which the grievance must be filed relevant to the complained of conduct. See, Id. Although Plaintiff was detained on the day the incident underlying the present action allegedly occurred, Plaintiff was released from this period of incarceration only two months later on October 30, 2013. [Ex. 2, Docket No. 87-1]. Because Plaintiff was released from that period of incarceration a relatively short time after the incident occurred and because after his release it appears he would no longer be able to use the grievance process outlined by the Dakota County Jail Inmate Handbook, it is less than evident whether or not the administrative remedies were actual available to Plaintiff. However, the Court need not resolve this question because the Court finds Defendants are entitled to summary judgment on other grounds.

> Summary judgment should be granted if the evidence, viewed in the light most favorable to the nonmoving party, indicates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. A party opposing summary judgment may not rest upon mere allegations or denials contained in the pleadings, but must, by sworn affidavits and other evidence, set forth specific facts showing that there is a genuine issue for trial.

Mehrkens v. Blank, 556 F.3d 865, 868–69 (8th Cir. 2009) (citations omitted). The evidence must be viewed in the light most favorable to the nonmoving party, and the nonmoving party must be given the benefit of all reasonable inferences to be drawn from the underlying facts in the record. Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp., 950 F.2d 566, 569 (8th Cir. 1991). However, the "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007).

> Nevertheless:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party does so, the nonmoving party must "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324. A disputed fact is "material" if it might affect the outcome of the case, and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). However, "[w]here the moving party fails to satisfy its burden to show initially the absence of a genuine issue concerning any material fact, summary judgment must be denied even if no opposing evidentiary matter is presented." Foster v. Johns-Manville Sales Corp., 787 F.2d 390, 393 (8th Cir. 1986).

"Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas

v. Corwin, 483 F.3d 516, 526–27 (8th Cir. 2007). While the burden of demonstrating the absence of any genuine issue of material fact rests on the moving party, the nonmoving party may not rest on mere allegations or denials in their pleadings, but the non-moving party must set forth specific admissible evidence-based facts showing the existence of a genuine issue. Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002). "Naked assertions, unsubstantiated by the record," made in rebuttal do not amount to sufficient evidence to preclude summary judgment. Dutton v. University Healthcare Sys., L.L.C., 136 F. App'x 596 (5th Cir. 2005) (unpublished decision); see also, Simms v. McDowell, No. 4:08cv-60-M, 2009 WL 3160353, at *5 (W.D.Ky. Sept. 25, 2009) (holding that speculation that someone lied in an affidavit is "insufficient to defeat a motion for summary judgment."). "A properly supported motion for summary judgment is not defeated by self-serving affidavits." Frevert v. Ford Motor Co., 614 F.3d 466, 473 (8th Cir. 2010) (quoting Bacon v. Hennepin Cty. Med. Ctr., 550 F.3d 711, 716 (8th Cir. 2008)). "Rather, the plaintiff must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." Id. at 473–74. A plaintiff may not merely point to unsupported self-serving allegations but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor. Wilson v. Int'l Bus. Mach. Corp., 62 F.3d 237, 241 (8th Cir. 1995); Smith v. International Paper Co., 523 F.3d 845, 848 (8th Cir. 2008). "If the moving party supports the motion with evidence, the opposing [non-moving] party must rebut it, or the court can consider the fact undisputed." Irish v. U.S. Dept. of Justice, Civ. No. 11-2703 (MJD/JJK), 2013 WL 451314, at *2 (D. Minn. Jan. 3, 2013) (citing Fed. R. Civ. P. 56(e)(2)), adopted by, 2013 WL 452576, rev'd on other grounds, 564 Fed. App'x 259 (8th Cir. 2014).

In addition, a movant is entitled to summary judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. Under such circumstances, no genuine issue of fact exists because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. If the nonmoving party relies on conclusory allegations, and fails to present evidence supporting a necessary element of a claim, then that claim cannot survive summary judgment. Beyer v. Firstar Bank, N.A., 447 F.3d 1106, 1108 (8th Cir. 2006).

As previously observed, while the Court is required to construe the content within Plaintiff's pleadings liberally as he is proceeding pro se, Plaintiff is nevertheless bound by all applicable procedural and substantive law. See, Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004); Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984) ("Although pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law."); Farnsworth v. City of Kansas City, Mo., 863 F.2d 33, 34 (8th Cir. 1988) ("Pro se litigants are not excused from complying with court orders or substantive and procedural law.") (citing Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984)). The claims of a plaintiff, even a pro se plaintiff, cannot survive a motion for summary judgment unless the plaintiff has set forth specific admissible facts demonstrating that there is a genuine issue for trial. See, Quam v. Minnehaha Cty. Jail, 821 F.2d 522, 522 (8th Cir. 1987).

### B.  The Record Now Before the Court

As noted above, Plaintiff did not respond to Defendants' Motion for Summary Judgment. Plaintiff has consequently failed to submit any admissible evidence in opposition to Defendants' present dispositive Motion.

Relative to Defendants' present Motion for Summary Judgment, the record now before the Court consists solely of the materials submitted by Defendants in support thereof.

Specifically, Defendants submitted a copy of Plaintiff's responses to Defendants' discovery requests, copies of certain state court documents concerning Plaintiff, and certain Dakota County Jail documents concerning Plaintiff's activities at the Dakota County jail before the day when the incident underlying the present action occurred. Most relevant to the present Motion, Defendants submitted the Incident Report of Defendant Deputy Kent Themmes describing the incident underlying the present action. [Ex. 6, Docket No. 87-1].[4] Defendants also submitted the Supplemental Incident Reports of Defendant Deputies Tina Tyler, Christine Winfrey, Arturo Herrera, Adam Smith, Julienee Oppong, Jacob Schak, Ryan Fitzhenry, and Virginia Jones. [Exs. 7–14, Docket No. 87-1].[5] Each of these Supplemental Incident Reports substantiates Defendant Deputy Themmes' Incident Report, and several of the Supplemental Reports also provide a description of the events that occurred before Defendant Deputy Themmes arrived at the scene of the incident of which Plaintiff now complains.

Although the submitted Incident Report and Supplemental Incident Reports are not in the form of sworn affidavits, the Court may properly consider these reports as evidence when adjudicating the merits of Defendants' Motion for Summary Judgment. When determining the propriety of considering evidence submitted in support of a motion for summary judgment, "the standard is not whether the evidence at the summary judgment stage would be admissible at trial—it is whether it *could* be present at trial in an admissible form." Gannon Int'l, Ltd. v. Blocker, 684 F.3d 785, 793 (8th Cir. 2012) (citing Fed. R. Civ. P. 56(c)(2)) (emphasis in original); see, Oglesby v. Lesan, 929 F.3d 526, 535 (8th Cir. 2019). A district court does not abuse its discretion in considering documents submitted in support of a motion for summary judgment when the non-movant fails to even "argue that the information contained in [the

---

[4] Defendant Deputy Themmes' Incident Report indicates it was prepared on August 30, 2013, the date of the incident of which Plaintiff complains.
[5] The Supplemental Incident Reports indicate they were prepared on either August 30, 2013, or August 31, 2013.

evidence] could not [be] presented in an admissible form at trial." <u>Gannon Int'l, Ltd.</u>, 684 F.3d at 793; <u>Oglesby</u>, 929 F.3d at 535.

In the present case, Plaintiff has wholly failed to argue that the information contained in the Incident Report and Supplemental Incident Reports could not be presented in any admissible form at trial. Moreover, on the record now before the court, it appears that any such argument would be futile. The Incident Report and the Supplemental Incident Reports were each prepared by an employee of the Dakota County Jail regarding an incident of which they each have personal knowledge because they were each present during and observed the incident. It is a reasonable inference that each of these persons could be called to testify in person at trial. In fact, on the record at the Motions Hearing, Defendants' counsel proffered that if the present matter were to proceed to trial, each of the Defendant Deputies would likely be called as a witness to testify. (Apr. 14, 2020, Motions Hearing, Digital Record at 2:03–2:08 p.m.).

Therefore, the Court may properly consider the unrefuted Incident Report and Supplemental Incident Reports as evidence for the purposesm,m,m,  of the present Motion when adjudicating the merits of Defendants' Motion for Summary Judgment. Because Plaintiff has failed to even attempt to rebut the Incident Report or the Supplemental Incident Reports, nor questioned the authenticity of the information contained therein, the Court may consider the facts contained therein to be undisputed. <u>See</u>, <u>Irish</u>, 2013 WL 451314, at *2.

### C.  Uncontested Material Facts

The unrefuted facts now before the Court demonstrate that on August 16, 2013, Plaintiff was arrested by the Hasting Police Department for allegedly violating a previously issued no contact order. <u>See</u>, <u>State v. Heiderscheid</u>, No. 19HA-CR-13-2589 (Minn. Dist. Ct 2013). Upon

his arrest, Plaintiff was taken to the Dakota County Jail, and subsequently, a Minnesota State Court ordered that he be detained pending trial. Id.

During his pretrial detention, on August 30, 2013, between the hours of 6:00 p.m. and 8:00 p.m., Plaintiff began repeatedly pushing the medical emergency button in his cell without any medical emergency actually occurring. [Ex. 7, Docket No. 87-1]. At approximately 9:00 p.m., Plaintiff demanded to immediately speak with the "sergeant." Id. Defendant Deputy Tyler informed Plaintiff that the "sergeant" would be informed of the request, but that the "sergeant" was currently busy. Plaintiff then began repeatedly kicking the door to his cell. Id. Defendant Deputy Tyler informed Defendant Deputy Winfrey of the situation, and Defendant Deputy Tyler was instructed to have non-Defendant Deputy Jones speak with Plaintiff to attempt to calm down Plaintiff. Id. Non-Defendant Deputy Jones was contacted, and Defendant Deputy Tyler left the unit. Id.

At approximately 9:30 p.m., Defendant Deputy Tyler observed that Plaintiff had covered the window of his cell door thereby obstructing the view into his cell from outside, and Defendant Deputy Tyler asked Plaintiff to uncover his window. Id.  Plaintiff refused. Id.

Other inmates then informed Defendant Deputy Tyler that they believed Plaintiff to be suicidal. Id. Deputy Defendant Tyler could not confirm or refute the assertion that Plaintiff was suicidal because Plaintiff refused to take down the object covering his window, and he refused to speak to Defendant Deputy Tyler. Id. Defendant Deputy Winfrey was again informed of the situation. Id.

Defendant Deputy Winfrey went to the unit where Plaintiff's cell was located. [Ex. 8, Docket No. 87-1]. The obstruction was removed from Plaintiff's window. See, Id.[6] Defendant Deputy Winfrey attempted to speak with Plaintiff, however, Plaintiff repeatedly yelled, "I'm

---

[6] The record now before the Court does not specifically indicate who removed the window covering.

gonna fucking take Dakota County down! I'm gonna drag all your uniforms through the mud! You are all gonna be in the middle of CNN and NBC! I'm gonna take your fucking jobs!" Id. After Plaintiff refused to cease his yelling, Defendant Deputy Winfrey advised Plaintiff that he would need to lower his voice and keep his cell window clear of any obstruction. Id. Defendant Deputy Winfrey then began to exit the unit, however, upon doing so, she observed Plaintiff recover his window, begin yelling again, and banging on his cell door. Id.[7]

Defendant Deputy Winfrey then called for assistance, and she requested the restraint chair be brought. Id. She also informed Plaintiff that he was being placed into the restraint chair for his safety. Id.

When additional staffed arrived in response to the call for assistance, they were apprised of the situation, and the restrained chair was brought into the unit. See, [Ex. 6, Docket No. 87-1]. Plaintiff stood by the door to his cell staring at the approaching Deputies. Id. Plaintiff was instructed to back up to the cell door and to place his hands through the door to be handcuffed. Id. Plaintiff was placed into handcuffs. Id. The cell to Plaintiff's door was then opened, and Plaintiff was instructed to slowly back out. Id. As he was being guided backward, Plaintiff attempted to "pull away with force from" Defendant Deputy Fitzhenry. Id.[8] Defendant Deputy Schack entered the cell to assist Deputy Fitzhenry in guiding Plaintiff to the restraint chair, and Plaintiff was placed in the restrain chair. Id. Defendant Deputy Themmes stood by and "provided coverage with" his Taser. Id.

---

[7] In response to Defendants' Request for Admissions, Plaintiff admitted that, on the date of the incident giving rise to the present action, he covered the window to his cell more than once, despite being repeatedly provided instructions to the keep his window uncovered; he was instructed to lower his voice; and he pushed the medical emergency button in his cell repeatedly while he was not having a medical emergency. [Ex. C, Docket No. 86-1].
[8] In response to Defendants' Request for Admission, Plaintiff admitted that he "pull[ed] away" from jail staff. [Ex. C, Docket No. 86-1].

Defendant Deputy Themmes instruct the "staff to move in and start securing the feet right away." Id. Defendant Deputy Schack attempted to secure Plaintiff's left leg to the restraint chair; however, it was not proving successful because Plaintiff "was physical[ly] attempting to push off from the chair, standing up, and fight[ing] with staff." Id. Non-Defendant Deputy Jones was encountering similar problems with Plaintiff's right leg. Id. Plaintiff raised his leg up to his chest, and he kicked in a downward motion in an attempt to kick non-Defendant Deputy Jones. Id.; [Ex. 14, Docket No. 87-1]. The staff present was unable to secure Plaintiff's legs due to his kicking. [Exs. 6, 14, Docket No. 87-1].

Defendant Deputy Fitzhenry unsuccessfully attempted to secure Plaintiff's feet. [Ex. 13, Docket No. 87-1]. While Defendant Deputy Fitzhenry was attempting to secure Plaintiff's feet, Plaintiff "was able to stomp on [Defendant Deputy Fitzhenry's] right pointer finger causing" him to retract his hands. Id.

Defendant Deputy Herrera and Defendant Deputy Smith were unsuccessfully attempting to keep Plaintiff's head secure, however, Plaintiff continued "to tense his body, and [he] was lifting himself out of the chair." [Ex. 6, Docket No. 87-1]; [Ex. 9, Docket No. 87-1]. Both Defendant Deputy Herrera and Defendant Deputy Smith applied pressure to Plaintiff's pressure points, and they each instructed Plaintiff to stop resisting. [Ex. 9, Docket No. 87-1]. Despite the instructions to stop resisting, Plaintiff continued to resist being secured to the restraint chair. Id.[9]

Throughout the encounter, Plaintiff continuously verbally threatened the staff members. On at least one occasion, Plaintiff told Defendant Deputy Herrera, "just wait until I get out of here I am going to fuck you up and your son that works here." [Ex. 13, Docket No. 87-1].

---

[9] In response to Defendants' Request for Admission, Plaintiff admitted he "refused to stay seated in a restraint chair," and he "attempted more than once to stand up from a restraint chair." [Ex. C, Docket No. 86-1].

While observing the scene, Defendant Deputy Themmes, "[f]earing for the safety of staff, and fearing that [Plaintiff] was about to break free and charge," deployed his taser at Plaintiff for a five second cycle. [Ex. 6, Docket No. 87-1]. The Taser probes made contact on Plaintiff's "right side just below the rib cage" and on his "right upper thigh." Id. After the five second cycle of the Taser, the staff uncuffed Plaintiff, and they secured him to the restraint chair. Id. However, Plaintiff continued to verbally threaten staff and fight being restrained. Id.; [Exs. 8, 13, Docket No. 87-1].

After Plaintiff was secured to the restraint chair, Defendant Deputy Winfrey removed the Taser probes from Plaintiff's body. Id. Plaintiff was then escorted in the restraint chair to an intake holding cell. Id.  Once he was secured inside the cell, photographs were taken of the Taser probe sites, and Defendant Deputy Fitzhenry cleaned the Taser probe sites with alcohol. Id.

### D.  Analysis

The Court evaluates Defendants' Motion for Summary Judgment in light of the presently uncontested material facts as described above. See, Scott, 550 U.S. at 380; Irish, 2013 WL 451314, at *2.

As noted above, Plaintiff, pursuant to 42 U.S.C. § 1983, raises a single claim alleging that Defendants' actions violated Plaintiff's Fourteenth Amendment right to be free the infliction of excessive force.[10] At the time of the incident alleged in his Amended Complaint, Plaintiff had been arrested for the alleged violation of a no contact order, however, he had not yet been convicted of any crime nor sentenced to any term of imprisonment. See, State v. Heiderscheid,

---

[10] Although in some circumstances it is possible to recover against an officer who did not personally use excessive force if that officer failed to prevent another officer's use of excessive force, it would not be reasonable to infer such a claim here from Plaintiff's Amended Complaint. See, Amended Compl. [Docket No. 25]. Plaintiff's Amended Complaint is devoid of any assertion or allegation that any Defendant should have protected Plaintiff from the alleged conduct. Reading the Amended Complaint as a whole, it is evident that Plaintiff sought to allege that all the Defendants were involved in the alleged assault. Moreover, given the Court's finding below that the force used during the incident at issue was objectively reasonable and, therefore, constitutionally permissible, any such failure to protect claim would necessarily fail. See, Hicks v. Norwood, 640 F.3d 839, 843 (8th Cir. 2011).

No. 19HA-CR-13-2589 (Minn. Dist. Ct 2013). Therefore, for the purposes of his present claim, Plaintiff was a pretrial detainee.

When a pretrial detainee is being held at a state or county institution, the applicable constitutional provision is the Due Process Clause of the Fourteenth Amendment. See, Kingsley v. Hendricken, 576 U.S. 389, 397–99 (2015). To bring a claim for excessive force under 42 U.S.C. § 1983, "a pretrial detainee must show . . . that the force purposely or knowingly used against him was objectively unreasonable." Id. at 396–97. The Court should not "apply this standard mechanically"; instead, "objective reasonableness turns on the 'facts and circumstances of each particular case.'" Id. at 397 (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Id.

> In applying this standard, the Court should consider the following factors:
>
> The relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

Id. The Court "must also account for the legitimate interest that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional safety." Id. (citations and internal quotations omitted). "Because liability under § 1983 is personal, courts must assess the reasonableness of each defendant's conduct independently." Cravener v. Shuster, 885 F.3d 1135, 1139 (8th Cir. 2018) (citing Heartland Acad. Cmty. Church v. Waddle, 595 F.3d 798, 805–06 (8th Cir. 2010)).

Defendants do not dispute that there was a use of force during the incident underlying the present action. The question is whether that force was objectively reasonable.

Although the Court must consider the conduct of each Defendant separately, several of the factors are common to all the individually named Defendants. Common to all Defendant Deputies was the severity of the security problem, the threat reasonably perceived, whether Plaintiff was actively resisting, and certain initial efforts to limit the amount of force that was needed and ultimately used.

Each of the Defendants were aware that Plaintiff had been repeatedly yelling and kicking the door to his cell, and they were also aware that Plaintiff had repeatedly refused instructions to cease yelling and kicking the door to his cell. Similarly, each of the Deputy Defendants was present to observe Plaintiff immediately pull away with force as soon as he was placed into handcuffs, and the Defendants were also each present to witness Plaintiff verbally accost Defendants and actively resist being secured to the restraint chair, including Plaintiff's attempts to physically strike at least two Defendant Deputies. Therefore, the Defendant Deputies possessed an objectively "reasonable expectation of aggression" from "a resistant subject." See, Cravener, 885 F.3d at 1139.

As already noted, the Court must also make an individual assessment of each Defendant Deputy regarding the individualized factors: the relationship between the need for the use of force and the amount of force used, as well as, the extent of Plaintiff's injuries. Although individually assessed, several of these factors here again overlap for the majority of the Defendant Deputies.

For example, Defendant Deputies Winfrey, Tyler, and Oppong do not appear to have actively participated in restraining Plaintiff in any way. The record before the Court is devoid of

any evidence demonstrating that Defendant Deputy Winfrey, Tyler, or Oppong participated in physically restraining Plaintiff or made any physical contact with Plaintiff during the incident at issue. On the record now before the Court, these Defendants did not use any force on Plaintiff, and therefore, there was no resulting injury from any action taken by these Defendants.

Defendant Deputies Schak and Fitzhenry similarly provide overlapping results even when their conduct is individually assessed. The record now before the Court demonstrates that the only relevant action taken by Defendant Deputy Schak or Defendant Deputy Fitzhenry was their initial placement of handcuffs upon Plaintiff, of which he does not complain, and their attempt to initially secure his legs to the restraint chair. On the record now before the Court, these actions do not appear to have caused any injury.[11] In light of Plaintiff's active, ongoing "resistance to instructions and interventions, this [limited] contact was entirely reasonable." See, gen., Cravener, 885 F.3d at 1139; see, gen., Ryan v. Armstrong, 850 F.3d 419, 428 (8th Cir. 2017).[12]

Defendant Deputies Herrera and Smith both attempted to control Plaintiff's head while the other officers unsuccessfully attempted to secure Plaintiff to the restraint chair. Defendant Deputies Herrera and Smith both also made attempts to limit any injury by instructing Plaintiff to stop resisting efforts to secure Plaintiff to the restraint chair, in addition to the other officers providing similar instructions. Based on Plaintiff's repeated refusals to comply with reasonable instructions to stop resisting being secured to the restraint chair and Plaintiff's active attempts to

---

[11] Plaintiff's Amended Complaint does not identify any specific, actual injury sustained by Plaintiff. See, Amended Compl. [Docket No. 25]. In response to Defendants' discovery request asking Plaintiff to identify all injuries he allegedly sustained, Plaintiff asserted only that he "received a brused [sic] nose and ear, and holes in [his] skin from the tazer [sic] probes." [Docket No. 86-1].

[12] To the extent Plaintiff's Amended Complaint could be broadly and liberally construed to assert that the use of the restraint chair itself amounted to excessive force, such an argument would fail. Courts in this Circuit have consistently found, under circumstances similar to the present case where a pretrial detainee is actively, physically resisting officer, that the use of a restraint chair was constitutionally permissible. See, e.g., Blevins v. Mollhoff, No. 18-cv-343 (PJS/HB), 2020 WL 1048944, at *7 (D. Minn. Jan. 30, 2020) (collecting cases), report and recommendation adopted, 2020 WL 1043668 (D. Minn. Mar. 4, 2020).

strike other law enforcement officers, Defendant Deputies Herrera and Smith determined that there was a need for the limited use of force through the application of pressure upon some of Plaintiff's pressure points.

Viewing the evidence in the light most favorable to Plaintiff, it is a reasonable inference that the application of pressure to his pressure points while Defendant Deputies Herrera and Smith attempted to control his head could have resulted in bruising of his noise and ear. However, this bruising is only a de minimis injury. See, Farkarlun v. Hanning, 855 F. Supp. 2d 906, 928 (D. Minn. 2012) (citing Wertish v. Krueger, 433 F.3d 1062, 1067 (8th Cir.2006) (noting that minor scrapes and bruises and aggravation of prior shoulder condition were de minimis injuries); Foster v. Metro. Airports Comm'n, 914 F.2d 1076, 1081 (8th Cir.1990)).

Under the circumstances of the present case, the use of a standard defensive tactic such as use of pressure points was objectively reasonable. See, Binion v. City of St. Paul, 788 F. Supp. 2d 935, 946 (D. Minn. 2011) (finding no excessive force where officers applied pressure points to "forcibly march" plaintiff to a patrol car); Blevins, 2020 WL 1048944, at *7 (finding no excessive force where officers applied pressure point to plaintiff's head and discussing application of pressure points as an approved use of force).

This leaves for this Court's further consideration only the conduct of Defendant Deputy Themmes during the incident underlying the present action. Defendant Deputy Themmes observed Plaintiff resisting the other officers' efforts to secure Plaintiff to the restraint chair, and Deputy Themmes was standing by and "provided coverage" with his Taser while the other officers unsuccessfully attempted to secure Plaintiff to the restraint chair. Defendant Deputy Themmes then deployed his Taser at Plaintiff because Defendant Deputy Themmes "[f]ear[ed]

for the safety of staff" and he also "fear[ed] that [Plaintiff] was about to break free and charge" him. Defendant Deputy Themmes deployed his Taser only a single time for 5 seconds.

Given the unrefuted record that Plaintiff was actively resisting officers' attempts to secure him to the restraint chair, that Plaintiff had injury at least one officer's hand and was attempting to kick or strike another officer, and that Defendant Deputy Themmes witnessed these actions in real time, Defendant Deputy Themmes' single deployment of his Taser to subdue Plaintiff was reasonably proportional in relation to Plaintiff's actions.

As the Eighth Circuit Court of Appeals has explained, "[n]umerous cases have upheld use of tasers to control potentially violent, defiant detainees who pose a safety risk to the officers or others, particularly when the officer warns that a taser will be used . . . ." Frederick v. Motsinger, 873 F.3d 641, 646 (8th Cir. 2017) (citing Bossart v. Janke, 859 F.3d 616, 625 (8th Cir. 2017); DeBoise v. Taser Int'l, Inc., 760 F.3d 892, 896 (8th Cir. 2014)). In the present case, Defendant Deputy Themmes' Taser was visible to Plaintiff while he resisted being secured to the restraint chair, and Defendant Deputy Themmes did not deploy the Taser until he feared for his safety and the safety of the other persons present. Defendant Deputy Themmes was not faced with only a "potentially violent, defiant detainee[,]" he was faced with an actively violent detainee who had already injured one officer and who was also actively resisting and defying reasonable instructions of other officers. Under the circumstances of the present case, Defendant Deputy Themmes' conduct was reasonable in relation to Plaintiff's actions. This weighs in favor of finding Defendant Deputy Themmes' conduct to be objectively reasonable.

The resulting injury to Plaintiff also weighs in favor of finding that Defendant Deputy Themmes' conduct was objectively reasonable. The only injury of which Plaintiff complains relative to the conduct of Defendant Deputy Themmes is the resulting holes from when the Taser

barbs struck him. He fails to even allege any lasting injury or any injury beyond the small holes initially left by the barbs of the Taser for which he received first aid immediately on site. Given the unrefuted description of Plaintiff's actions, including injuring at least one Deputy and attempting to injury another, the limited extent of this de minimis injury weighs in favor of finding the conduct of Defendant Deputy Themmes to be objectively reasonable.

Therefore, the Court's weighing of the relevant factors finds that Defendant Deputy Themmes' use of force was objectively reasonable.

In summary, viewing the undisputed record now before the Court in the light most favorable to Plaintiff (the non-moving party), the unrefuted facts in the present case demonstrate that the conduct of each individually named Defendant Deputy was constitutionally permissible because the use of force undertaken by the individual Defendant Deputies was objectively reasonable. The Court also notes that even if the conduct of the collective Defendant Deputies is considered as a whole, the review of the same relevant factors demonstrates that the collective use of force was also objectively reasonable.

On that basis, Defendant Deputies Winfrey, Herrera, Smith, Themmes, Schak, Tyler, Fitzhenry, and Oppong are each entitled to have judgment entered in their favor on Plaintiff's sole claim in the present case. Plaintiff has failed to provide any admissible evidence to create any genuine dispute of material fact.

Therefore, to the extent Defendants' Motion for Summary Judgment seeks an Order of this Court entering judgment on Plaintiff's sole claim against Defendant Deputies Winfrey, Herrera, Smith, Themmes, Schak, Tyler, Fitzhenry, and Oppong, the undersigned recommends that Defendants' Motion for Summary Judgment, [Docket No. 83], be **GRANTED**. Because this

recommendation disposes of the sole claim in Plaintiff's Amended Complaint, the undersigned further recommends that the entirety of the present action be **DISMISSED**.[13]

## VI.     Conclusion

Therefore, based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. Plaintiff's Motion to Modify Pretrial Scheduling Order, [Docket No. 77], is **DENIED**; and

---

[13] In the alternative, even if Defendants were not entitled to summary judgment being entered in their favor, the undersigned would still recommend that the present action be dismissed based on Plaintiff's failure to prosecute. "Courts have repeatedly recognized that dismissal for failure to prosecute is appropriate where a plaintiff effectively disappears by falling to provide a current address at which he or she can be reached." Grant v. Astrue, No. 9-cv-2818 (DWF/JSM), 2010 WL 3023915, at *2 (D. Minn. July 13, 2010) (citing Fate v. Doe, No. 7-cv-9256, 2008 WL 1752223, at *2 (S.D.N.Y. Apr. 16, 2008); Passe v. City of New York, No. 2-cv-6494, 2009 WL 290464, at *4 (E.D.N.Y. Jan. 5, 2009) (holding that plaintiff is responsible for failure to receive communications due to plaintiff's failure to provide the court with updated and correct contact information); Abraham v. Singh, No. 4-cv-44, 2005 WL 2036887 at, *2 (E.D.La. July 27, 2005) (noting that plaintiff's inaccessibility and failure to update his address suggest a failure to prosecute his case)), report and recommendation adopted, 2010 WL 3023661 (D. Minn. Aug. 2, 2010). It is Plaintiff's responsibility to keep this Court properly apprised of his current address so that he may receive correspondence from this Court. See, e.g., Hogquist v. Anoka Cty. Dist. Courts, No. 19-cv-2471 (WMW/KMM), 2019 WL 6874709, at *1, n.1 (D. Minn. Dec. 17, 2019); Beaker v. Pro-Staff, No. 17-cv-77 (WMW/TNL), 2017 WL 4570774 (D. Minn. Oct. 12, 2017); Heiderscheid v. Purdy, No. 18-cv-2677 (PJS/DTS), 2019 WL 4394850 (D. Minn. Aug. 22, 2019). Rule 41(b) of the Federal Rules of Civil Procedure permits a Court to dismiss an action "[i]f the plaintiff fails to prosecute or to comply with" the Federal Rules of Civil Procedure "or a court order." Fed. R. Civ. P. 41(b). "The authority of a court to dismiss sua sponte for lack of prosecution has generally been considered an 'inherent power.'" Link v. Wabash R.R. Co., 370 U.S. 626, 629 (1962). As detailed above, Plaintiff has continuously failed to keep the Court or Defendants apprised of his contact information which has repeatedly caused substantial delays in the present action, including a period of seven months in which Plaintiff failed to have any contact with either the Court or Defendants. Moreover, other than filing two Notices of Change of Address, Plaintiff has failed to take any action in the present case since February 27, 2020, including failing to respond to Defendants' Motion for Summary Judgment as directed by this Court's February 19, 2020, Order. [Docket No. 98]. Plaintiff has recently provide the Court with another change of address update, however, Plaintiff failed to make any attempt to explain his abandonment of the present action over the months proceedings this notification of his change of address nor any attempt to explain his failure to comply with this Court's previous directives. See, [Notice of Change of Address, Docket No. 115]. Plaintiff was previously forewarned that continuation of this conduct would result in the dismissal of the present action. See, [Order, Docket No. 65]. In addition, other Courts in this District have also previously warned Plaintiff that similar conduct could lead to the dismissal of an action, and in fact, other Courts in this District have dismissed Plaintiff's action for a failure to prosecute based on Plaintiff's actions there which mirror his conduct in the present case. See, Heiderscheid v. Purdy, No. 18-cv-2677 (PJS/DTS), 2019 WL 4394850 (D. Minn. Aug. 22, 2019) report and recommendation adopted, 2019 WL 4393990 (D. Minn. Sept. 13, 2019). Plaintiff's ongoing conduct in the present case demonstrates a failure to prosecute the present action. This represents a sufficient, independent basis to recommend dismissal of the present action, and therefore, even assuming solely for the sake of argument that Defendants' were not entitled to summary judgment pursuant to Rule 56 being entered in their favor, the undersigned would still recommend that the present action be dismissed for a failure to prosecute. See, Fed. R. Civ. P. 41(b); Heiderscheid v. Purdy, No. 18-cv-2677 (PJS/DTS), 2019 WL 4394850 (D. Minn. Aug. 22, 2019).

2. Plaintiff's Motion to Appoint Counsel, [Docket No. 78], is **DENIED**.

Further, based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Defendants' Motion for Summary Judgment, [Docket No. 83], be **GRANTED**, as set forth above;

2. Plaintiff's Amended Complaint as alleged against Defendant Dakota County Sheriff's Office be **DISMISSED without prejudice**;

3. Plaintiff's Amended Complaint as alleged against Defendant Deputies Winfrey, Herrera, Smith, Themmes, Schak, Tyler, Fitzhenry, and Oppong be **DISMISSED with prejudice**; and

4. The present action be **DISMISSED** in its entirety.

Dated: July 22, 2020                        s/Leo I. Brisbois
                                            Hon. Leo I. Brisbois
                                            United States Magistrate Judge

## N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).